**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 14-4134-cv                                          Caption [use short title]

**Motion for:** Motion to Dismiss

NML Capital, Ltd. v. Republic of Argentina

Set forth below precise, complete statement of relief sought:

Appellees respectfully request that this Court dismiss

the Republic of Argentina's appeals from the district court's

order finding the Republic in contempt for violating an

Injunction that this Court affirmed in Appeal No. 12-105(L),

699 F.3d 246 (2d Cir. 2012), 727 F.3d 230 (2d Cir. 2013).

| | |
|---|---|
| **MOVING PARTY:** NML Capital, Ltd. | **OPPOSING PARTY:** Republic of Argentina |
| ☑ Plaintiff  ☐ Defendant | |
| ☐ Appellant/Petitioner  ☑ Appellee/Respondent | |

**MOVING ATTORNEY:** Matthew D. McGill          **OPPOSING ATTORNEY:** Carmine D. Boccuzzi

[name of attorney, with firm, address, phone number and e-mail]

| | |
|---|---|
| Gibson, Dunn & Crutcher LLP | Cleary Gottlieb Steen & Hamilton LLP |
| 1050 Connecticut Ave., NW // Washington, DC 20036 | One Liberty Plaza // New York, NY 10006 |
| (202) 955-8500 // mmcgill@gibsondunn.com | (212) 225-2000 // cboccuzzi@cgsh.com |

**Court-Judge/Agency appealed from:** Southern District of New York (Griesa, J.)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below?          ☐ Yes  ☐ No
Has this relief been previously sought in this Court?  ☐ Yes  ☐ No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?  ☐ Yes  ☑ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes  ☑ No  If yes, enter date: _____

**Signature of Moving Attorney:**
/s/ Matthew D. McGill          **Date:** 2/12/2015          Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>　　　　　　Plaintiff-Appellee,<br><br>　v.<br><br>REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant-Appellant. | No. 14-4134-cv |
| NML CAPITAL, LTD.,<br><br>　　　　　　Plaintiff-Appellee,<br><br>　v.<br><br>REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant-Appellant. | No. 14-4143-cv |
| AURELIUS CAPITAL MASTER, LTD.,<br>ACP MASTER, LTD.,<br><br>　　　　　Plaintiffs-Appellees,<br><br>　v.<br><br>REPUBLIC OF ARGENTINA,<br><br>　　　　　Defendant-Appellant. | No. 14-4145-cv |

*(captions continue on following pages)*

## APPELLEES' MOTION TO DISMISS

NML CAPITAL, LTD.,

                Plaintiff-Appellee,

    v.

                                            No. 14-4147-cv

REPUBLIC OF ARGENTINA,

                Defendant-Appellant.

PABLO ALBERTO VARELA, LILA INES
BURGUENO, MIRTA SUSANA DIEGUEZ,
MARIA EVANGELINA CARBALLO,
LEANDRO DANIEL POMILIO, SUSANA
AQUERRETA, MARIA ELENA CORRAL,
TERESA MUNOZ DE CORRAL, NORMA
ELSA LAVORATO, CARMEN IRMA
LAVORATO, CESAR RUBEN VAZQUEZ,
NORMA HAYDEE GINES, MARTA
AZUCENA VAZQUEZ,

                Plaintiffs-Appellees,

    v.

                                            No. 14-4148-cv

REPUBLIC OF ARGENTINA,

                Defendant-Appellee.

AURELIUS OPPORTUNITIES FUND II,
LLC , AURELIUS CAPITAL MASTER,
LTD.,

                    Plaintiffs-Appellees,

      v.                          No. 14-4150-cv

REPUBLIC OF ARGENTINA,

                    Defendant-Appellant.

AURELIUS CAPITAL MASTER, LTD.,
AURELIUS OPPORTUNITIES FUND II,
LLC,

                    Plaintiffs-Appellees,

      v.                          No. 14-4152-cv

REPUBLIC OF ARGENTINA,

                    Defendant-Appellant.

AURELIUS CAPITAL MASTER, LTD.,
ACP MASTER, LTD.,

                    Plaintiffs-Appellees,

      v.                          No. 14-4161-cv

REPUBLIC OF ARGENTINA,

                    Defendant-Appellant.

AURELIUS CAPITAL MASTER, LTD.,
AURELIUS OPPORTUNITIES FUND II,
LLC,

Plaintiffs-Appellees,

v.

REPUBLIC OF ARGENTINA,

Defendant-Appellant.

No. 14-4167-cv

AURELIUS CAPITAL MASTER, LTD.,
AURELIUS OPPORTUNITIES FUND II,
LLC,

Plaintiffs-Appellees,

v.

REPUBLIC OF ARGENTINA,

Defendant-Appellant.

No. 14-4175-cv

BLUE ANGEL CAPITAL I LLC,

Plaintiff-Appellee,

v.

REPUBLIC OF ARGENTINA,

Defendant-Appellant.

No. 14-4190-cv

BLUE ANGEL CAPITAL I LLC

                Plaintiff-Appellee,

    v.

REPUBLIC OF ARGENTINA,                  No. 14-4193-cv

                Defendant-Appellant,

BANK OF AMERICA, N.A.

                Respondent.

---

OLIFANT FUND LTD.,

                Plaintiff-Appellee,

    v.                         No. 14-4213-cv

REPUBLIC OF ARGENTINA,

                Defendant-Appellant.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel state that:

NML Capital, Ltd. is not publicly traded and has no corporate parent, and no publicly held corporation owns 10% or more of its stock.

Aurelius Capital Master, Ltd. ("ACM") is an exempted company with limited liability incorporated in the Cayman Islands. Aurelius Capital International, Ltd., is the parent of ACM. No publicly held corporation owns 10% or more of the stock of ACM.

ACP Master, Ltd. is an exempted company with limited liability incorporated in the Cayman Islands. Aurelius Capital Partners, LP, is the parent of ACP Master, Ltd. Aurelius Capital GP, LLC is the sole general partner of Aurelius Capital Partners, LP, and is the indirect parent of ACP Master, Ltd. No publicly held corporation owns 10% or more of the stock of ACP Master, Ltd.

Aurelius Opportunities Fund II, LLC ("AOF") is a limited liability company organized and existing under the laws of the State of Delaware. AOF is not a corporation and therefore Rule 26.1 does not require any disclosures with respect to it.

Blue Angel Capital I LLC ("Blue Angel") is a limited liability company organized and existing under the laws of the State of Delaware. Blue Angel is not

a corporation and therefore Rule 26.1 does not require any disclosures with respect to it.

Olifant Fund, Ltd., is not publicly traded; its parent corporation is ABIL, Ltd., and no publicly held corporation owns 10% or more of its stock.

Pablo Alberto Varela, Lila Ines Burgueno, Mirta Susana Dieguez, Maria Evangelina Carballo, Leandro Daniel Pomilio, Susana Aquerreta, Maria Elena Corral, Teresa Munoz de Corral, Norma Elsa Lavorato, Carmen Irma Lavorato, Cesar Ruben Vazquez, Norma Haydee Gines, and Marta Azucena Vazquez are not corporations, and therefore Rule 26.1 does not require any disclosures with respect to them.

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................1

BACKGROUND .......................................................................................3

ARGUMENT ...........................................................................................7

I.    This Court Lacks Jurisdiction To Review A Contempt Order That
      Defers Deciding Sanctions. ..........................................................7

II.   Argentina's Assertion Of Immunity From Sanctions That Have Yet
      To Be Imposed Does Not Create Appellate Jurisdiction. ...........10

CONCLUSION ......................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Af-Cap, Inc. v. Republic of Congo*,
  462 F.3d 417 (5th Cir. 2006) ................................................................. 6, 15

*Aurelius Capital Master, Ltd. v. Republic of Argentina*,
  No. 14-2689 (2d Cir. Sept. 19, 2014) ................................................17

*Autotech Techs. LP v. Integral Research & Dev. Corp.*,
  499 F.3d 737 (7th Cir. 2007) ..............................................................14

*Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*,
  948 F.2d 111 (2d Cir. 1991) ...............................................................12

*Chambers v. Nasco, Inc.*,
  501 U.S. 32 (1991) ...............................................................................13

*Comptone Co. v. Rayex Corp.*,
  251 F.2d 487 (2d Cir. 1958) (per curiam) ...........................................8

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978) ...............................................................................8

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012) ........................................................ 10, 11

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
  637 F.3d 373 (D.C. Cir. 2011) ............................................................14

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
  281 F.3d 48 (2d Cir. 2002) .......................................................... 13, 14

*Forschner Grp., Inc. v. Arrow Trading Co.*,
  124 F.3d 402 (2d Cir. 1997) ..............................................................7, 8

*Kensington Int'l Ltd. v. Republic of Congo*,
  461 F.3d 238 (2d Cir. 2006) ...............................................................12

*Liberty Synergistics Inc. v. Microflo Ltd.*,
  718 F.3d 138 (2d Cir. 2013) ...............................................................13

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Motorola, Inc. v. Computer Displays Int'l, Inc.*,
739 F.2d 1149 (7th Cir. 1984) .................................................................. 9, 11

*New York v. Shore Realty Corp.*,
763 F.2d 49 (2d Cir. 1985) ...................................................................... 9, 11

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012) ("*NML I*") ................................................ 3, 4, 17

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013) ("*NML II*") .............................................. 3, 4, 17

*NML Capital, Ltd. v. Republic of Argentina*,
No. 13-4269 (2d Cir. Feb. 11, 2014) ........................................................17

*NML Capital, Ltd. v. Republic of Argentina*,
No. 14-2588 (2d Cir. Oct. 31, 2014) ........................................................17

*NML Capital, Ltd. v. Republic of Argentina*,
No. 14-2922 (2d Cir. Oct. 22, 2014) ........................................................17

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
162 F.3d 748 (2d Cir. 1998) .....................................................................12

*Republic of Argentina v. NML Capital, Ltd.*,
134 S. Ct. 2250 (2014) ........................................................................ 15, 16

*Schwartz v. City of New York*,
57 F.3d 236 (2d Cir. 1995) .........................................................................8

*Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*,
190 F.3d 1360 (Fed. Cir. 1999) ..................................................................8

**Statutes**

28 U.S.C. § 1291 ..................................................................................2, 7

28 U.S.C. § 1609 ............................................................................... 6, 12

28 U.S.C. § 1610 ............................................................................... 6, 12

28 U.S.C. § 1611 ............................................................................... 6, 12

NML Capital, Ltd., Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC, Blue Angel Capital I LLC, Olifant Fund Ltd., and Pablo Alberto Varela, *et al.* ("Appellees"), respectfully move, pursuant to Rule 27 of the Federal Rules of Appellate Procedure, to dismiss these appeals.

## INTRODUCTION

On February 23, 2013, Argentina's counsel informed a panel of this Court that Argentina would not "voluntarily obey" an Injunction that prohibits Argentina from disregarding payment obligations owed to Appellees when it honors certain other external debts. This Court affirmed the district court's Injunction, and the Supreme Court denied Argentina's petition for a writ of certiorari, bringing the Injunction into effect. And since then, true to its word, Argentina has defied the Injunction at every turn: It has attempted on multiple occasions to make payments to its other bondholders without paying Appellees; it has attempted to restructure its debts to evade the district court's ability to enforce the Injunction; and it has placed several full-page advertisements in national newspapers castigating the district judge and encouraging holders of Argentina's bonds to defy his Injunction.

After receiving evidence of Argentina's blatant misconduct, the district court found Argentina in civil contempt of court (the "Contempt Finding"), but reserved judgment on the appropriate sanction. Argentina now appeals from the Contempt Finding.

This Court lacks jurisdiction over these appeals. Black-letter law makes clear that, without an accompanying contempt sanction, the Contempt Finding is neither a final judgment appealable under 28 U.S.C. § 1291, nor is it appealable under the collateral order doctrine.

And Argentina's claims that the district court denied its immunity contentions under the Foreign Sovereign Immunities Act ("FSIA") and an unratified United Nations treaty do not transform the Contempt Finding into an appealable order. Argentina claims that it is immune from any "enforceable" contempt order because it assertedly is immune from monetary contempt sanctions. Both the premise and the conclusion of this argument are false: The FSIA and the unratified treaty do not immunize foreign states from the imposition of contempt sanctions any more than they immunize foreign states from the entry of judgments, and here Argentina has waived any immunity from the jurisdiction and judgments of the district court. In any event, the appropriateness of a contempt finding does not depend on whether it is "enforceable." Argentina's claim of immunity thus is just a pretextual sideshow intended here only to usher before this Court yet another collateral attack on an Injunction that this Court twice has affirmed, and the Supreme Court twice has declined to review. Indeed, the pretextual nature of this assertion of immunity is starkly exposed by the inescapable fact that the district court has not yet addressed the issue of sanctions. The district court therefore

2

hardly can be said to have "conclusively determined" Argentina's (wholly specious) claim of immunity from sanctions. Argentina's rote invocation of immunity cannot convert the district court's Contempt Finding into an appealable collateral order.

## BACKGROUND

Appellees are holders of bonds (the "Agreement Bonds") that Argentina issued starting in 1994, pursuant to a Fiscal Agency Agreement (the "Agreement") that it refuses to honor. In the Agreement, Argentina agreed that New York law would govern the Agreement Bonds, with disputes adjudicated in courts located in New York, and expressly and comprehensively waived its sovereign immunity. *See NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 237 (2d Cir. 2013) ("*NML II*"). The Agreement also included an "Equal Treatment Provision" requiring Argentina to hold its payment obligations to holders of Agreement Bonds at a rank at least equal to its payment obligations to other creditors. *Ibid*.

In 2001, Argentina initiated the largest sovereign default the world then had seen, declaring a "moratorium" on repayment of debts totaling more than $80 billion, including the Agreement Bonds. *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 251 (2d Cir. 2012) ("*NML I*"). In 2005 and 2010, Argentina sought to restructure its bond obligations through a take-it-or-leave-it exchange offer inviting holders of the Agreement Bonds to trade them for new

3

bonds (the "Exchange Bonds") worth "25 to 29 cents on the dollar." *Id.* at 252-53. Starting in 2005, Argentina made regular and full payments on the Exchange Bonds while refusing to pay a cent on the remaining Agreement Bonds held by bondholders who chose not to participate in the 2005 and 2010 exchange. *Ibid.*

Appellees sued in the district court and obtained a judgment recognizing, among other things, that Argentina's payment on the Exchange Bonds, without making payment on the Agreement Bonds, violated the Equal Treatment Provision. *Id.* at 253-54. To remedy this breach of contract, the district court issued an order (the "Injunction")—affirmed by this Court—forbidding Argentina from making payment on the Exchange Bonds without making a "ratable payment" on the Agreement Bonds. *Id.* at 246; *NML II*, 727 F.3d 230.

Cognizant of Argentina's history of disobeying judicial decrees, the district court simultaneously prohibited Argentina from "taking action to evade the directives of [the Injunction], render it ineffective, or to take any steps to diminish the Court's ability to supervise compliance with [it], including, but not limited to, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds." D.E. 425 ¶ 4.[1] This anti-evasion provision prohibits Argentina from, *inter alia*, substituting the entities that now

---

[1] Citations to "D.E. __" refer to entries from docket No. 08-cv-6978 (S.D.N.Y.).

process Argentina's Exchange Bond payments—which are subject to the district court's jurisdiction—with other entities in Argentina or elsewhere.

Argentina repeatedly has violated the Injunction, including its anti-evasion provisions. On June 16, 2014—the same day the Supreme Court denied Argentina's petition to review the Injunction—Argentina's President declared that Argentina would not "be subjected to such extortion" and, on June 17, 2014, Argentina's economy minister proposed a new exchange that would allow Argentina to evade the Injunction by paying the Exchange Bondholders in Argentina, under Argentine law. *See* D.E. 527. The district court promptly declared that this plan would violate the Injunction. *Ibid.* The next week, Argentina violated the Injunction yet again by attempting to make the June 30, 2014 payment on the Exchange Bonds without making a ratable payment to Appellees, by forwarding funds to the current trustee for certain Exchange Bonds (the Bank of New York Mellon). D.E. 633.

Most recently, on September 11, 2014, Argentina enacted legislation (Law No. 26,984) purporting to permit the Ministry of Economy and Public Finances to: (i) replace the Bank of New York Mellon with a state affiliate (Nacion Fideicomisos, S.A.) willing to process the payments that Argentina makes in violation of the Injunction, and (ii) implement a swap of the Exchange Bonds for new securities governed by Argentine law and subject to Argentine jurisdiction

5

under identical financial terms and conditions. D.E. 678-29, 678-30, 678-31. Then, on September 22, 2014, Argentina published a full-page so-called "Legal Notice" in the New York Times and the Wall Street Journal disclosing that Argentina had taken these steps and encouraging Exchange Bondholders to assist it in altering the payment mechanism by removing the current trustee. D.E. 678-46.

Appellees moved to hold Argentina in contempt for these violations of the Injunction. D.E. 677. In opposing the motion, Argentina argued that, notwithstanding this Court's prior cases affirming contempt sanctions against a foreign state, it was "immune" from contempt because: (1) the unratified United Nations Convention on Jurisdictional Immunities of States and Their Property (the "Convention") prohibits monetary contempt sanctions against a foreign state, D.E. 685 at 2-5; and (2) Sections 1609-1611 of the FSIA (28 U.S.C. §§ 1609-11)— which protect certain foreign state property from attachment—render any "order for monetary sanctions . . . unenforceable." *Id*. at 5-8 (citing *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428-29 (5th Cir. 2006)). It also argued that, apart from its asserted immunity from monetary sanctions, its conduct did not warrant contempt. *Id.* at 8-13.

On September 29, 2014, the district court found Argentina "in civil contempt of court" but "reserve[d] decision" on the appropriate sanction "for further briefing." D.E. 687. On October 3, 2014, the court issued an order clarifying that

6

Argentina could purge its contempt by taking steps "including, but not limited to, re-affirming the role of The Bank of New York Mellon as the indenture trustee . . . and complying completely with the [Injunction]." D.E. 693. Argentina then filed the present appeal challenging the district court's Contempt Finding, D.E. 706, even though the issue of sanctions remains pending before the district court and Argentina retains the opportunity to purge its contempt before any sanctions are imposed.

## ARGUMENT

This Court lacks jurisdiction over—and should dismiss—Argentina's appeal from the district court's Contempt Finding. A contempt finding that reserves judgment on sanctions is not an appealable final judgment and is not appealable under the collateral order doctrine. Nor does Argentina's assertion of immunity from certain sanctions render the Contempt Finding appealable; the district court has not addressed the issue of sanctions and thus has not conclusively ruled on these baseless claims of immunity.

## I. THIS COURT LACKS JURISDICTION TO REVIEW A CONTEMPT ORDER THAT DEFERS DECIDING SANCTIONS.

It is well established in this Court that "an order adjudging a party in contempt unaccompanied by sanctions is not final and therefore is not appealable" as a final judgment under 28 U.S.C. § 1291. *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 410 (2d Cir. 1997). Until a "penalty has been

imposed," a contempt order "remains merely a finding, without judgment thereon, subject to modification, prior to judgment." *Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir. 1958) (per curiam). Because no sanction has issued, D.E. 687, the Contempt Finding is not a final judgment.

Nor can Argentina appeal the Contempt Finding under the collateral order doctrine. *Forschner*, 124 F.3d at 410. That "narrow exception" to the final judgment rule permits interlocutory appeal of an order that "(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment." *Schwartz v. City of New York*, 57 F.3d 236, 237 (2d Cir. 1995) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). A contempt finding without sanctions fails each of these requirements.

*First*, a contempt finding standing alone is not "conclusive" because it is "merely a finding" and "subject to modification." *Comptone*, 251 F.2d at 488. A contempt order is not conclusive unless "the opportunity to purge the contempt has passed and the position of the parties has been affected." *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1369 (Fed. Cir. 1999). Until then, a contempt finding is "inherently tentative," *Coopers & Lybrand*, 437 U.S. at 469 n.11, because a litigant can cure the contempt by ceasing the contumacious activity. The district court stated how Argentina can purge its contempt and has not issued a

sanction.  *See* D.E. 693.  Because Argentina can free itself from contempt before any sanction is imposed, the Contempt Finding itself is not "conclusive" of anything.

*Second*, the proceedings that remain pending in the district court are contempt proceedings, and a contempt *finding* is by definition not separate from the merits of the contempt proceedings.  An adjudication of contempt for violating a permanent injunction is a separate "post-judgment proceeding," *New York v. Shore Realty Corp.*, 763 F.2d 49, 51 (2d Cir. 1985), in which the "principal issues" are the existence of and remedy for contempt.  *Motorola, Inc. v. Computer Displays Int'l, Inc.*, 739 F.2d 1149, 1154 (7th Cir. 1984).  A contempt finding without sanction—like the order from which Argentina appeals—thus is not completely separate from the merits of the district court's contempt proceedings.  *Ibid.*  To the contrary, the Contempt Finding here *is* the merits.

*Third*, a contempt finding is not effectively unreviewable after final judgment because it can be "review[ed] on appeal" from an order "impos[ing] a sanction."  *Id.* at 1154; *accord Shore Realty*, 763 F.2d at 51.

Because the Contempt Finding is neither an appealable collateral order, nor a final judgment, this Court lacks jurisdiction over these appeals from it.

## II. ARGENTINA'S ASSERTION OF IMMUNITY FROM SANCTIONS THAT HAVE YET TO BE IMPOSED DOES NOT CREATE APPELLATE JURISDICTION.

Argentina can be expected to claim, as it has many times in the past, that the district court's decision amounts to a denial of immunity and that Argentina may therefore invoke this Court's appellate jurisdiction under the collateral order doctrine. But that tactic cannot sustain an interlocutory appeal in this instance.

In opposing Appellees' contempt motion below, Argentina did not argue that sovereign immunity prohibited the court from entering the Contempt Finding *vel non*. Rather, Argentina argued that the district court could not practically enter an "*enforceable* contempt order[]" because the Convention immunizes it from monetary contempt sanctions and its FSIA execution immunity renders such sanctions "unenforceable." D.E. 685 at 2-8 (emphasis added). This can only be understood as a claim of immunity from *sanctions*. And there can be no collateral order review from that issue unless it is (1) conclusively determined, (2) not susceptible to appellate review later, and (3) important. Argentina satisfies none of these tests.

**A.** *First*, the district court's Contempt Finding does not conclusively resolve Argentina's assertion of immunity from sanctions. An order eligible for immediate appeal must represent the district court's "final word" on that issue. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205-06 & n.5 (2d Cir. 2012). But

here, the district court has yet to address Argentina's argument that the Convention or the FSIA prohibit contempt sanctions against a foreign sovereign. D.E. 685 at 5. Instead, the district court "reserve[d] decision" on all questions related to sanctions. D.E. 687. The district court has not rendered *any* determination with respect to Argentina's sanctions-immunity arguments, let alone one that is "conclusive," and if Argentina cures its contempt, the court may not need to decide the issue at all.

**B.** *Second*, the Contempt Finding is not "effectively unreviewable on appeal from a final judgment," because it can be reviewed if and when the district court enters a sanction that implicates Argentina's supposed immunity from monetary sanctions. *Motorola*, 739 F.2d at 1154; *accord Shore Realty*, 763 F.2d at 51. Even under the logic of Argentina's own immunity argument, Argentina's sovereignty is not implicated unless and until the district court issues and attempts to enforce a particular sanction. If the court does issue a sanction, this Court will remain available to hear Argentina's appeal, thus belying entirely any contention that the Contempt Finding is "unreviewable." *Cf. EM Ltd.*, 695 F.3d at 206 (finding order compelling discovery of foreign assets reviewable because "any future attachment or collection proceeding would be conducted in a foreign court," and not appealable to this Court).

11

In this respect, Argentina's immunity claims here differ dramatically from the types of immunity assertions that courts hear on interlocutory appeal. For example, "jurisdictional immunity" under FSIA Sections 1604-1605A—which Argentina has waived and does not assert here—is ordinarily effectively unreviewable on appeal from final judgment because it is an "immunity from trial and the attendant burdens of litigation." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998). In contrast, Argentina asserted below only that the FSIA's *attachment and execution* immunity provisions, 28 U.S.C. §§ 1609-1611 (and other penalty-based immunities under the Convention) protected Argentina from hypothetical contempt sanctions. D.E. 685 at 5. Interlocutory orders denying that type of immunity are not immediately appealable, *Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 240 (2d Cir. 2006), because "an erroneous grant of such an order will not subject a foreign state to a proceeding that could be avoided by a successful appeal," *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 114-15 (2d Cir. 1991). Indeed, by "reserv[ing] decision on the issue of sanctions," D.E. 687 at 25, the court "cause[d] no irreparable loss," *Caribbean Trading*, 948 F.2d at 114—or any consequence whatsoever—that would justify this piecemeal appeal.

**C.** *Finally*, especially in view of its comprehensive waiver of immunity, Argentina's claims of immunity are too weak to register as "important" issues

warranting immediate appellate resolution. *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 148 (2d Cir. 2013). The inquiry into "importance" is "pragmatic," ensuring that "the considerations that favor immediate appeals seem comparatively strong and those that disfavor such appeals seem comparatively weak." *Ibid*. Argentina's premature and meritless immunity arguments certainly fail this test.

Argentina has submitted to the jurisdiction of the district court, and district courts possess a "necessary" and "inherent" power to "impose . . . submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Nothing in the FSIA or the unratified United Nations Convention even remotely suggests the displacement of district courts' authority to sanction the contumacious conduct of those within its jurisdiction. Indeed, the utter lack of merit of Argentina's immunity contentions makes clear that the issues in this appeal are not "important" at all.

**FSIA.** Argentina's FSIA contentions fail for at least three reasons.

*First*, Argentina's immunity arguments fly in the face of established precedent in this Court and its sister circuits affirming contempt orders against foreign states. In *First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, (2d Cir. 2002), this Court affirmed a district court order holding a foreign sovereign's instrumentality in contempt for violating orders compelling discovery

13

in aid of execution of defaulted loans. *Id.* at 53-55. It rejected the instrumentality's argument that contempt should be "vacate[d]" because "the district court lacked subject matter jurisdiction." *Id.* at 51. It reasoned that, having properly found subject matter jurisdiction for the underlying suit under the FSIA's "commercial activities" provision, the district court could proceed with the action: A sovereign's "waiver . . . rendering it a party to an action, is broad enough to sustain the court's jurisdiction through proceedings to aid collection of a money judgment rendered in the case." *Id.* at 53-54. That binding precedent applies with full force here: Argentina waived its immunity from suit in the Agreement; that waiver thus sustained the district court's jurisdiction through recent contempt proceedings.[2]

---

[2] This Court's precedent is also consistent with the decisions of other courts of appeals. The D.C. Circuit, for example, has held that "there is not a smidgen of indication in the text of the FSIA that Congress intended to limit a federal court's inherent contempt power." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 378 (D.C. Cir. 2011). It also rejected the contention, now advanced by Argentina, that "a court should not issue an unenforceable order," *id.* at 379, explaining that the FSIA "explicitly contemplates" a contempt fine against a foreign state even if it cannot be enforced by attaching property, *id.* at 377. Similarly, the Seventh Circuit rejected a foreign state's argument that "the FSIA does not authorize federal district courts to enter monetary contempt sanctions against foreign sovereigns," concluding that "[o]nce a court is entitled to exercise subject matter jurisdiction over the suit, it has the full panoply of powers" provided by the Federal Rules and its inherent authority. *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 2007).

14

*Second*, Argentina's arguments disregard the Supreme Court's most recent rejection of an Argentine claim of immunity in *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014), where the Court explained that foreign-state immunity extends *only* to the immunities articulated in the FSIA's text. The FSIA's text provides the "*comprehensive*" set of foreign-state immunities: "any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *Id.* at 2255-56. Immunity for foreign states is thus limited to the FSIA's two "immunity-conferring provision[s]"—one providing immunity from jurisdiction, and one providing immunity from attachment and execution. *Id.* at 2256. The Court thus rejected Argentina's argument that the FSIA also limited discovery in aid of execution against Argentina's assets, stating "the Act says not a word on the subject," so the normal "federal discovery rules" apply. *Id.* at 2256-57.

Under this reasoning, because the FSIA does not explicitly provide for any immunity from contempt or contempt sanctions, a foreign state is not immune from contempt proceedings to which it has otherwise submitted.[3]

---

[3] In contrast, the Fifth Circuit's refusal to impose monetary sanctions against a sovereign was based on that court's reasoning that, because the FSIA does not explicitly permit "[m]onetary sanctions," "[t]he contempt order [at issue], as written, d[id] not fall within the provisions of the FSIA." *Af-Cap*, 462 F.3d at 428-29. This holding is thus no longer good law in light of the Supreme Court's *NML* decision.

15

*Third*, even if the FSIA did somehow affect the availability of contempt proceedings, Argentina "irrevocably waived" *all* "such immunity" under the FSIA. *NML*, 134 S. Ct. at 2253 n.1.

**The Convention.**  Argentina's contentions that the Convention curtails the district court's jurisdiction to hold parties before it in contempt is even further off the mark.  *First*, as Argentina conceded below, "the Convention is not yet in force and the United States is not a signatory to it."  D.E. 685 at 3.  The Convention thus could not possibly constrain the district court's inherent contempt authority. *Second*, to the extent that Argentina contends that the Convention imposes some other non-statutory limit on the district court's jurisdiction, such arguments are dead after the Supreme Court's *NML* decision—the FSIA represents the final and complete word on foreign-state sovereignty.  *See* 134 S. Ct. at 2255.  *Third*, even if the Convention applied, it only prohibits imposing a "fine or penalty," *see* D.E. 685 at 2, which the district court's Contempt Finding has not imposed, *see* D.E. 687.  *Finally*, Argentina's waiver of immunity is certainly broad enough to cover the Convention's unratified and unenforceable terms.

*   *   *

Argentina's premature appeal here is just the most recent effort in a spate of meritless and procedurally improper appeals.  Argentina has already taken seven appeals from orders related to the Injunction alone, including two appeals of the

16

Injunction that this Court resolved on the merits in Appellees' favor,[4] three interlocutory appeals that this Court dismissed for lack of jurisdiction,[5] and two interlocutory appeals that Argentina voluntarily withdrew before this Court could rule on its jurisdiction,[6] plus numerous other appeals related to the enforcement of the Agreement Bonds.  If the Contempt Finding is affirmed, Argentina certainly will appeal yet again once sanctions are imposed.  This Court should not allow Argentina to abuse the collateral order doctrine and burden this Court's docket every time the district court enters an order with which it disagrees.  This Court should therefore reject Argentina's attempt to manufacture an appeal merely by incanting the words "immunity" over the otherwise unappealable Contempt Finding.

## CONCLUSION

This Court should dismiss Argentina's appeal of the Contempt Finding.

---

[4]  *See NML I*, 699 F.3d 246; *NML II*, 727 F.3d 230.

[5]  *See NML Capital, Ltd. v. Republic of Argentina*, No. 14-2922 (2d Cir. Oct. 22, 2014); *Aurelius Capital Master, Ltd. v. Republic of Argentina*, No. 14-2689 (2d Cir. Sept. 19, 2014); *NML I*, 699 F.3d at 256 n.9.

[6]  *See NML Capital, Ltd. v. Republic of Argentina*, No. 14-2588 (2d Cir. Oct. 31, 2014); *NML Capital, Ltd. v. Republic of Argentina*, No. 13-4269 (2d Cir. Feb. 11, 2014).

Respectfully submitted,

By: *Matthew D. McGill*

February 12, 2015

Robert A. Cohen
(robert.cohen@dechert.com)
Denis H. Hranitzky
(dennis.hranitzky@dechert.com)
DECHERT LLP
1095 Avenue of the Americas
New York, N.Y. 10036-6796
(212) 698-3500

Theodore B. Olson
(tolson@gibsondunn.com)
Matthew D. McGill
(mmcgill@gibsondunn.com)
Jason J. Mendro
(jmendro@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500

*Attorneys for Plaintiff-Appellee NML Capital, Ltd.*

Edward A. Friedman
(efriedman@fklaw.com)
Daniel B. Rapport
(drapport@fklaw.com)
FRIEDMAN KAPLAN SEILER &
ADELMAN LLP
7 Times Square
New York, N.Y. 10036
(212) 833-1100

Roy T. Englert, Jr.
(renglert@robbinsrussell.com)
Mark T. Stancil
(mstancil@robbinsrussell.com)
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER &
SAUBER LLP
1801 K Street, N.W.
Washington, D.C. 20006
(202) 775-4500

*Attorneys for Plaintiffs-Appellees Aurelius Capital Master, Ltd., Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., and Blue Angel Capital I LLC*

18

William M. Jay                         Stephen D. Poss
(wjay@goodwinprocter.com)              (sposs@goodwinprocter.com)
GOODWIN PROCTER LLP                    Robert D. Carroll
901 New York Avenue, N.W.              (rcarroll@goodwinprocter.com)
Washington, D.C. 20001                 GOODWIN PROCTER LLP
(202) 346-4190                         Exchange Place
                                       Boston, MA 02109
                                       (617) 570-1753

*Attorneys for Plaintiff-Appellee Olifant Fund, Ltd.*


Michael C. Spencer
(mspencer@milberg.com)
MILBERG LLP
One Pennsylvania Plaza
New York, N.Y. 10119
(212) 594-5300

*Attorney for Plaintiffs-Appellees*
*Alberto Varela, et al.*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th of February, 2015, a true and correct copy of the foregoing Motion to Dismiss was served on the following counsel of record in this appeal via CM/ECF pursuant to Local Rule 25.1 (h)(1) & (2).

*Matthew D. McGill*

Carmine D. Boccuzzi, Jr., Esq.
Cleary Gottlieb Steen & Hamilton LLP
1 Liberty Plaza
New York, N.Y. 10006

Jonathan I. Blackman, Esq.
Cleary Gottlieb Steen & Hamilton LLP
City Place House
55 Basinghall Street
London, EC2V 5EH
England

Daniel James Northrop, Esq.
Cleary Gottlieb Steen & Hamilton LLP
1 Liberty Plaza
New York, N.Y.  10006

1